**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| HARLEM GLOBETROTTERS INTERNATIONAL, INC., | \| | |
| | \| | |
| *Plaintiff*, | \| | |
| v. | \| | Case No. 1:23-cv-00546-LMM |
| | \| | |
| SUNSET PICTURES, LLC and BRIARCLIFF ENTERTAINMENT LLC, | \| | |
| | \| | |
| *Defendants.* | / | |
| _____ | / | |

<u>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

**Page**

*SWEETWATER: THE FILM IN DISPUTE* .......................................................... 2

*ARGUMENT* ................................................................................................. 3

**I.** **There Is No Personal Jurisdiction Over Defendants.** .................................. 3

    A.    There is no specific jurisdiction over either Defendant. ..................... 4

        1.    Subsection (1) of the Long Arm does not apply ...................... 4

        2.    Subsection (3) of the Long Arm does not apply ...................... 5

    B.    There is no personal jurisdiction over Sunset for the additional reason that Sunset did not cause HGI's alleged injury. ...................... 7

**II.** **Sweetwater's Depiction of Alleged HGI Marks Is Protected as a Matter of Law for Multiple Reasons.** ............................................... 8

    A.    Dismissal under Federal Rule 12(b)(6) is appropriate here. ............... 8

    B.    HGI's claims fail as a matter of law under the First Amendment. ...................................................................... 10

        1.    *Rogers* applies to *Sweetwater's* content .................................. 11

        2.    The use has artistic relevance ................................................. 12

        3.    The use is not explicitly misleading as to source ................... 15

        4.    HGI's insinuations about uniforms and social media miss the mark ................................................................................ 17

    C.    The statutory fair use defense also bars HGI's claims. ...................... 19

**III.** **HGI's Dilution Claim Separately Fails For the Independent Reason that HGI Does Not Plausibly Allege Fame for Each of the HGI Marks.** ............................................................... 23

*CONCLUSION* ............................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aero Toy Store, LLC v. Grieves*,
631 S.E.2d 734 (Ga. Ct. App. 2006)....................................................4

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
No. 18-cv-2897, 2018 U.S. Dist. LEXIS 72282 (S.D.N.Y. Apr. 30,
2018) ...................................................................................................5

*Brain Pharma, LLC v. Scalini*,
858 F. Supp. 2d 1349 (S.D. Fla. 2012) ..............................................25

*Brookwood Funding, LLC v. Avant Credit Corp.*,
No. 1:14-cv-2960-SCJ, 2015 U.S. Dist. LEXIS 191679 (N.D. Ga.
July 28, 2015)..............................................................................24, 25

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) ............................................................9

*Brown v. Showtime Networks, Inc.*,
394 F. Supp. 3d 418 (S.D.N.Y. 2019) ....................................12, 13, 16

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.*,
886 F.2d 490 (2d Cir. 1989) ..............................................................12

*Cooper Tire & Rubber Co. v. McCall*,
863 S.E.2d 81 (Ga. 2021) ...................................................................4

*Day v. Taylor*,
400 F.3d 1272 (11th Cir. 2005) ........................................................10

*Dickinson v. Ryan Seacrest Enters.*,
No. 18-cv-2544, 2018 U.S. Dist. LEXIS 225109 (C.D. Cal. Oct. 1, 2018) .......11

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) ..........................................................11

*Empirical Regent v. Sunny Design & Bus. Consulting*,
No. 1:19-cv-3253-MHC, 2020 U.S. Dist. LEXIS 143503 (N.D. Ga.
Feb. 25, 2020) ....................................................................................5, 6

*ETW Corp. v. Jireh Publ'g, Inc.*,
332 F.3d 915 (6th Cir. 2003) .............................................. 12, 20, 25

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021).............................................................................4

*Fortres Grand Corp. v. Warner Bros. Entm't, Inc.*,
947 F. Supp. 2d 922 (N.D. Ind. 2013) ...................................................9

*Hidden City Phila. v. ABC, Inc.*,
No. 1:18-cv-65, 2019 U.S. Dist. LEXIS 32795 (E.D. Pa. Mar. 1,
2019) ........................................................................................................9

*Int'l Stamp Art, Inc. v. U.S. Postal Serv.*,
456 F.3d 1270 (11th Cir. 2006) .........................................................23

*IOU Cent., Inc. v. Big State Tire & Axle, Inc.*,
No. 1:20-cv-200-MHC, 2020 U.S. Dist. LEXIS 211739 (N.D. Ga.
Oct. 8, 2020) ...........................................................................................4

*Kason Indus. v. Allpoints Foodservice Parts & Supplies, LLC*,
No. 3:17-cv-26-TCB, 2018 U.S. Dist. LEXIS 173096 (N.D. Ga.
Mar. 6, 2018)...................................................................................23, 25

*Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012) .....................................9, 10, 12

*Medina v. Dash Films, Inc.*,
No. 15-cv-2551, 2016 U.S. Dist. LEXIS 91691 (S.D.N.Y. July 14,
2016) ................................................................................................15, 16

*MGFB Props., Inc. v. Viacom Inc.*,
54 F.4th 670 (11th Cir. 2022) ........................................14, 15, 18, 19

*MGFB Props., Inc. v. Viacom, Inc.*,
  No. 5:19-cv-257, 2021 U.S. Dist. LEXIS 201502 (N.D. Fla. Sep.
  22, 2021) ................................................................................................11, 25

*Monbo v. Nathan, No. 18-cv-5930*,
  2022 U.S. Dist. LEXIS 180608 (E.D.N.Y. Aug. 26, 2022) ..............................16

*New Kids on the Block v. News America Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992) ..............................................................................13

*Parsons v. Regna*,
  847 F. App'x 766 (11th Cir. 2021) ......................................................................20

*Rebellion Devs. Ltd. v. Stardock Entm't, Inc.*,
  No. 12-12805, 2013 U.S. Dist. LEXIS 66131 (E.D. Mich. May 9,
  2013) .....................................................................................................................9

*Rin Tin Tin, Inc. v. First Look Studios, Inc.*,
  671 F. Supp. 2d 893 (S.D. Tex. 2009)....................................................21, 22, 23

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*,
  134 F.3d 749 (6th Cir. 1998) ..............................................................................21

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*,
  71 F. Supp. 2d 755 (N.D. Ohio 1999) .................................................................21

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ......................................................................*passim*

*Schenker v. Assicurazioni Generali S.p.A., Consol.*,
  No. 98-cv-9186, 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. July 11,
  2002) .....................................................................................................................6

*Se. Clinical Nutrition Ctrs., Inc. v. Mayo Found. for Med. Educ. &
  Rsch.*,
  135 F. Supp. 3d 1267 (N.D. Ga. 2013)................................................................10

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*,
  No. 10-cv-2982, 2011 U.S. Dist. LEXIS 155444 (C.D. Cal. May
  11, 2011) ..............................................................................................................10

iv

*Thoroughbred Legends, LLC v. Walt Disney Co.*,
   No. 07-cv-1275-BBM, 2008 U.S. Dist. LEXIS 19960 (N.D. Ga.
   Feb. 12, 2008) .........................................................................20, 21, 22, 23

*United Techs. Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009) .............................................................8

*Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*,
   683 F.3d 1266 (11th Cir. 2012) ...................................................*passim*

*Valencia v. Universal City Studios LLC*,
   No. 1:14-cv-528-RWS, 2014 U.S. Dist. LEXIS 174644 (N.D. Ga.
   Dec. 18, 2014) ........................................................................................9

*Vallejo v. Narcos Prods., LLC*,
   No. 1:18-cv-23462, 2019 U.S. Dist. LEXIS 89008 (S.D. Fla. May
   24, 2019) ............................................................................................9, 12

*WCVB-TV v. Boston Athletic Ass'n*,
   926 F.2d 42 (1st Cir. 1991)...................................................................21

*Winchester Mystery House, LLC v. Glob. Asylum, Inc.*,
   148 Cal. Rptr. 3d 412 (6th Cal. Dist. Ct. App. 2012).........................16

**Statutes**

15 U.S.C. § 1115(b)(4)..........................................................................10, 19

15 U.S.C. § 1125(c)(3)................................................................................25

O.C.G.A. § 9-10-91......................................................................................4

O.C.G.A. § 9-10-91(1).................................................................................4

O.C.G.A. § 9-10-91(3).................................................................................5

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...............................................................................8

History belongs to the public. No person or entity has a monopoly on their depiction in the re-telling of history. Nevertheless, claiming violations of alleged trademark rights in the word marks GLOBETROTTERS, HARLEM GLOBETROTTERS, and MAGICIANS OF BASKETBALL, the  design mark, and the "Sweet Georgia Brown" whistling tune mark, as well as common-law rights in a vintage uniform design (red-and-white shorts and a blue top with the Globetrotters' name alongside star symbols) (Dkt. No. [25], ¶¶ 31, 32, 35) ("HGI Marks"), Harlem Globetrotters International, Inc. ("HGI") seeks to stifle the re-telling of history as experienced by one of the Globetrotters' own icons.

*Sweetwater* chronicles Nat "Sweetwater" Clifton's breaking of the color barrier as one of the first Black players in the National Basketball Association ("NBA"). Ex. 1 to Decl. of C. Thakore [Ex. A] ("Ex. A-1"). Before he joined the NBA, Clifton was a Globetrotter. In telling of Clifton's rise, the producers took pains to avoid the perception of HGI's sponsorship while keeping true to history: they changed "Globetrotters" to "Trotters," used a different version of the public domain "Sweet Georgia Brown" song, and designed a different uniform. They also limited the use: ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

1

███████████████████████████████████████████████

██████████████████████████████████████ The "Trotters" play in red-and-white striped shorts and blue tops with "Harlem" printed across and stars above and below it, and display their basketball skills and panache.

The First Amendment and fair use protect *Sweetwater's* re-telling of this history. The film's portrayal of Clifton's time with the Globetrotters reflects reality and invokes the atmosphere of the era. The use of alleged HGI Marks is neither gratuitous nor misleading about the film's source. Rather, the depiction of Clifton's time with the Globetrotter's is measured, and, more importantly, is relevant and necessary for context. Even if this Court had personal jurisdiction over the Defendants, and it does not, HGI's claims all fail as a matter of law.

### *SWEETWATER:* THE FILM IN DISPUTE

The biographical film chronicles Clifton, his role in contesting racism in basketball, and the systemic changes set in motion when he transitioned from the Harlem Globetrotters to the New York Knicks. *Sweetwater's* depiction of the Globetrotters forms the foreground for Clifton's groundbreaking journey. An original, jazzy "Sweet Georgia Brown" tune evokes the era and invokes Globetrotter nostalgia. Vintage-style uniforms, reminiscent of ones worn by Harlem-based teams of the era, take the audience to the 1940s.



## <u>ARGUMENT</u>

**I.    There Is No Personal Jurisdiction Over Defendants.**

HGI does not articulate the legal basis for its allegations of jurisdiction,

forcing Defendants (and the Court) to guess the purported basis. HGI does allege

that "Defendants have caused tortious injury to HGI, which is a resident of

Georgia" and that Sunset has produced films shot in Georgia, that Briarcliff

regularly distributes films produced in Georgia, and that both have derived

substantial revenue from films made or distributed in the state. Dkt. No. [25]

¶¶ 13–15. But, simply put, there is no jurisdiction in Georgia under any theory.[1]

## A.    There is no specific jurisdiction over either Defendant.

The Court may assert specific jurisdiction over Defendants under only six

circumstances authorized by O.C.G.A. § 9-10-91 (the "Long Arm"). *IOU Cent.,*

*Inc. v. Big State Tire & Axle, Inc.*, No. 1:20-cv-200-MHC, 2020 U.S. Dist. LEXIS

211739, at *9 (N.D. Ga. Oct. 8, 2020). Only two are even potentially relevant.

### 1.    Subsection (1) of the Long Arm does not apply. To the extent

HGI argues that jurisdiction over Defendants is proper under O.C.G.A.

§ 9-10-91(1), this argument fails. Subsection (1) authorizes jurisdiction over a

nonresident who "transacts any business" in Georgia if (among other things) "the

cause of action arises from or is connected with such act or transaction." *Aero Toy*

*Store, LLC v. Grieves*, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006). Although HGI

---

[1] HGI does not even attempt to allege general jurisdiction, with good reason: Sunset is a Nevada company with a principal office in California and Briarcliff is California-based. Dkt. No. [25] ¶¶ 18–19. Absent an "exceptional case," which this is not, under federal law, a company is subject to general jurisdiction only in "its place of incorporation and principal place of business." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). Defendants, neither incorporated nor headquartered here, are not subject to general jurisdiction in Georgia. Moreover, as they are not registered to do business in Georgia, they are not subject to general jurisdiction under state law. *See Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81, 92 (Ga. 2021).

alleges that Defendants have produced or distributed *other* movies filmed in Georgia, *Sweetwater* is not one of them. Consequently, HGI alleges no Georgia transactions by Defendants connected to the alleged infringement.

   **2.**   **Subsection (3) of the Long Arm does not apply.** Subsection (3) authorizes jurisdiction over a non-resident who "[c]ommits a tortious injury in this state caused by an act or omission outside this state" and "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3). HGI, however, does not allege tortious conduct *in Georgia*. Even assuming that trademark infringement is a tort, it does not follow that this alleged "tortious injury" occurred here. HGI apparently contends that the alleged injury occurred in Georgia because it resides here and, thus, Georgia is the situs of the economic loss. The Georgia Court of Appeals has rejected this argument. *Empirical Regent v. Sunny Design & Bus. Consulting*, No. 1:19-cv-3253-MHC, 2020 U.S. Dist. LEXIS 143503, at *23 (N.D. Ga. Feb. 25, 2020).

   Instead of focusing on the purported economic injury to HGI, the "paradigm harm in a trademark case [is] public confusion as to source." *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-cv-2897, 2018 U.S. Dist. LEXIS 72282, at *18 (S.D.N.Y. Apr. 30, 2018) (internal quotations omitted). In *Empirical*, the court

held that the plaintiff had sufficiently alleged the commission of a tortious injury in Georgia because it had alleged "the likelihood of confusion among Georgia consumers caused by [the defendants'] product." 2020 U.S. Dist. LEXIS 143503 at *25–26. Specifically, the plaintiff alleged that *Georgia customers* bought the trademark-infringing products and that the defendants' use of the infringing mark created a likelihood of confusion; the plaintiff also introduced evidence that four of its Georgia-based customers might testify about confusion. *Id.* at *2, *24–25.

Here, HGI does not allege likelihood of customer confusion *in Georgia*. Although it contends that *Sweetwater's* trailer is on YouTube (Dkt. No. [25] ¶ 74), unlike in *Empirical*, where Georgia customers allegedly bought the infringing products, HGI does not allege that Georgia residents watched the trailer.[2]

In fact, neither the film nor its trailer provide a basis for HGI to argue likelihood of confusion in Georgia such that it can show an in-state tortious injury at a time relevant for jurisdiction. "Personal jurisdiction is determined as of the time of service of the summons and complaint." *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98-cv-9186, 2002 U.S. Dist. LEXIS 12845, at *13

---

[2] The same holds for the alleged *Variety* magazine article and social media posts. Dkt. No. [25] ¶¶ 75–81. Moreover, as explained in Section II.A.3, Defendants did not generate the social media posts and, thus, were not the cause of any alleged associated "injury" in Georgia through them.

(S.D.N.Y. July 11, 2002). Here, as of that date, February 7, 2023, (Dkt. Nos. [11], [14]) neither *Sweetwater* nor its trailer was available to the public, much less to viewers in Georgia. *See* Decl. of Dahlia. W. Guigui [Ex. B] ¶¶ 12–13. Thus, at the time it commenced this action, HGI had no legitimate basis to assert that Georgia viewers had watched the official trailer and were likely to be confused. Because HGI cannot establish that Defendants committed a tortious injury in Georgia at the jurisdictionally relevant time, the Long-Arm does not extend to Defendants.[3]

### B.   There is no personal jurisdiction over Sunset for the additional reason that Sunset did not cause HGI's alleged injury.

Moreover, with respect to Sunset, HGI cannot establish specific jurisdiction for an additional reason. HGI alleges that Sunset "produced the Movie" and "granted exclusive distribution rights" to Briarcliff (Dkt. No. [25] ¶ 47), thereby making Sunset a tort-feasor subject to this Court's jurisdiction.[4] However, HGI's allegations are groundless. Sunset did not produce or fund *Sweetwater*, it did not grant any rights in the film to Briarcliff, and, in fact, it holds no rights to the film.

---

[3] Moreover, even if the trailer had been viewed in Georgia, HGI has not alleged that Georgia was targeted. Thus, any injury is geographically neutral.

[4] HGI also alleges that Sunset applied for a SWEETWATER trademark in 2007 (Dkt. No. [25] ¶ 43), but its infringement claims do not stem from that abandoned application.

Ex. B ¶¶ 5–8. While Sunset was given on-screen credit, this was simply a courtesy extended to the writer/director of *Sweetwater* and one of its producers because they are Sunset's owners (i.e., members), but they were not acting in their Sunset-related capacities in connection with their work on the film. *Id.* at ¶¶ 9–11.

"Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (internal quotations omitted). HGI cannot produce what does not exist. Sunset is not the producer, owner of rights, or distributor of *Sweetwater*. In short, Sunset did not cause HGI tortious injury and is not subject to jurisdiction under the Long Arm for this additional reason.

## II. *Sweetwater's* Depiction of Alleged HGI Marks Is Protected as a Matter of Law for Multiple Reasons.

### A. Dismissal under Federal Rule 12(b)(6) is appropriate here.

A complaint that "fail[s] to state a claim upon which relief can be granted" warrants dismissal. Fed. R. Civ. P. 12(b)(6). Courts regularly dismiss trademark infringement complaints that fail to allege facts sufficient to survive scrutiny under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), the framework for balancing trademark interests against First Amendment interests, which the Eleventh Circuit

adopted in *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.,* 683 F.3d 1266, 1278 (11th Cir. 2012).

For example, in *Vallejo v. Narcos Prods., LLC*, No. 1:18-cv-23462, 2019 U.S. Dist. LEXIS 89008, at *12–13 (S.D. Fla. May 24, 2019), plaintiff Virginia Vallejo alleged trademark infringement based on Netflix's use in the show *Narcos* of a character that was a caricature of the plaintiff. On considering the expressive work, the court dismissed the claim because the complaint did not "allege that Defendants were explicitly misleading about the source or content of Narcos" or "that the character [at issue] is not artistically relevant to the show." *Id.* at *13. *See also Valencia v. Universal City Studios LLC*, No. 1:14-cv-528-RWS, 2014 U.S. Dist. LEXIS 174644, at *22 (N.D. Ga. Dec. 18, 2014) (granting motion to dismiss under *Rogers*); *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (affirming dismissal of Lanham Act claims for failure to allege plausible claim that survives *Rogers*); *Hidden City Phila. v. ABC, Inc.*, No. 1:18-cv-65, 2019 U.S. Dist. LEXIS 32795, at *21–23 (E.D. Pa. Mar. 1, 2019) (dismissal of Lanham Act claims on First Amendment grounds); *Fortres Grand Corp. v. Warner Bros. Entm't, Inc.*, 947 F. Supp. 2d 922, 934 (N.D. Ind. 2013) (same); *Rebellion Devs. Ltd. v. Stardock Entm't, Inc.*, No. 12-12805, 2013 U.S. Dist. LEXIS 66131, at *15 (E.D. Mich. May 9, 2013) (same); *Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't*

*Inc.*, 868 F. Supp. 2d 172, 184–85 (S.D.N.Y. 2012) (same); *Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, No. 10-cv-2982, 2011 U.S. Dist. LEXIS 155444, at *25 (C.D. Cal. May 11, 2011) (same). Here, as explained below, the Court need only consider HGI's allegations and the film itself (Ex. A-1) to determine that the First Amendment protects the film under *Rogers*.[5]

Furthermore, and alternatively, HGI's claims are also barred because the uses here are fair uses pursuant to 15 U.S.C. § 1115(b)(4), which the Court likewise may resolve on a motion to dismiss. *See Se. Clinical Nutrition Ctrs., Inc. v. Mayo Found. for Med. Educ. & Rsch.*, 135 F. Supp. 3d 1267, 1279 (N.D. Ga. 2013) (granting motion to dismiss on statutory fair use grounds).

**B.     HGI's claims fail as a matter of law under the First Amendment.**

The Lanham Act is "narrowly" construed in deciding whether an artistically expressive work infringes a trademark. *Univ. of Ala., Inc.*, 683 F.3d at 1278. Joining many of its sister courts, the Eleventh Circuit instructs that, following *Rogers*, "[a]n artistically expressive use of a trademark will not violate the Lanham

---

[5] "[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Louis Vuitton*, 868 F. Supp. 2d at 176 n.6 (deeming film incorporated by reference because referred to in complaint and integral to claims).

Act unless [1] the use of the mark has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless [2] it explicitly misleads as to the source or content of the work." *Id.* (citations and quotations omitted). In *University of Alabama*, prints and paintings depicting the University team in its trademarked uniform were protected because the use of team uniforms was artistically relevant and nothing showed that the artist marketed the items as "endorsed" or "sponsored" by the University "or otherwise explicitly stated that such items were affiliated with the University." *Id.* at 1279. Rather, the artist's interest in artistic expression "so outweighed" any risk of consumer misunderstanding that the First Amendment protected the work. *Id.* Likewise, HGI's trademark rights must give way to Defendants' First Amendment interests in artistic expression and re-telling of history, as discussed below.[6]

   **1.**  ***Rogers* applies to *Sweetwater's* content.** *Rogers* is the appropriate framework for assessing HGI's trademark claims here. Numerous

---

[6] HGI's claims of dilution (Count Three) and unfair competition (Count Four) fall with its infringement claims under *Rogers*. *See, e.g.*, *MGFB Props., Inc. v. Viacom, Inc.*, No. 5:19-cv-257, 2021 U.S. Dist. LEXIS 201502, at *24 (N.D. Fla. Sep. 22, 2021) (applying *Rogers* to dilution claim); *see also Dickinson v. Ryan Seacrest Enters.*, No. 18-cv-2544, 2018 U.S. Dist. LEXIS 225109, at *18–20 (C.D. Cal. Oct. 1, 2018); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099-1101 (9th Cir. 2008) (same for unfair competition).

courts have extended the application of *Rogers* from movie titles (as was at issue there) to the content of expressive works because there "is no principled reason why [*Rogers*] ought not also apply to the use of a trademark in the body of the work." *Univ. of Ala.*, 683 F.3d at 1277 (quotations omitted); *see also Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.*, 886 F.2d 490, 494-95 (2d Cir. 1989) (applying *Rogers* to study guide parodies); *ETW Corp.*, 332 F.3d at 937 (applying *Rogers* to Tiger Woods' painting); *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 442 (S.D.N.Y. 2019) (applying *Rogers* to plaintiff's likeness in film); *Vallejo*, 2019 U.S. Dist. LEXIS 89008, at *12–13 (dismissing trademark claims regarding character in TV series); *Louis Vuitton*, 868 F. Supp. 2d at 184–85 (dismissing trademark claims based on film character's conduct). Because *Sweetwater* is an expressive work, a film about Clifton overcoming the NBA's color barrier, *Rogers* applies to the assessment of its use of alleged HGI Marks.

       **2.**    **The use has artistic relevance.** *Sweetwater's* use of the alleged HGI Marks is artistically relevant to the expressive work because that use is needed to truthfully portray history—Clifton's transition from the Globetrotters to the NBA. *Univ. of Ala.*, 683 F.3d at 1278–79 (finding use of uniforms "artistically relevant to the expressive underlying works because the uniforms' colors and

designs are needed for a realistic portrayal of famous scenes from Alabama football history").

Telling the story of Clifton's selection as one of the first Black players in the NBA without referencing the Globetrotters, the team where he caught the Knicks's attention and from which they drafted him, would distort history. *See New Kids on the Block v. News America Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) ("For example, one might refer to 'the two-time world champions' or 'the professional basketball team from Chicago,' but it's far simpler . . . to refer to the Chicago Bulls. In such cases, use of the trademark does not imply sponsorship or endorsement of the product . . . ."). In fact, the Court need look no further than HGI's own pleading to see the artistic relevance of the inclusion of the alleged HGI Marks in *Sweetwater. See, e.g.,* Dkt. No. [26] ¶ 2 ("Defendants' Movie centers around the story of . . . Clifton . . . , who played for the . . . Globetrotters . . . until he became the first black player to sign a contract" with the NBA); ¶ 22 ("Clifton is one of the many legendary basketball players who share history with the Globetrotters."); ¶ 66 ("███████████████████████████████████ ███████"). Pretending that the NBA selected Clifton in a vacuum would be an unfaithful portrayal of history and would cripple *Sweetwater*'s narrative. *See Brown*, 394 F. Supp. 3d at 442 (using Bobbi Brown's likeness in documentary

about Whitney Houston was "artistically relevant" where "Brown undoubtedly played a major role in Houston's life" as ex-husband and child's father).

HGI implies that *Sweetwater* makes excessive reference to HGI Marks, alleging, for example, ██████████████████████████████ ████████████████ (Dkt. No. [26] ¶ 4). This argument is flawed. First, the question is whether the references have "artistic relevance." A defendant need not show that use of the mark was "necessary" or had a particular expressive significance other than being "artistically relevant." *MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670, 681 (11th Cir. 2022). There can be no question here whether the references to the alleged HGI Marks are artistically relevant. For example, even assuming that HGI has rights in athletes spinning basketballs on their fingers, it is relevant that *Clifton* could do so, as it displays his skill. Similarly, as the film is about a Black athlete breaking into the New York Knicks, including "Harlem" on team uniforms is relevant.

Second, *Sweetwater's* producers self-evidently make effort to limit references to the HGI Marks by, for example, chiefly using "Trotters" rather than "Globetrotters" and using original versions of the song "Sweet Georgia Brown." To be clear, these changes were not required by law, but they nonetheless rebut HGI's allegations of excess and exploitation.

As for HGI's protestation that ████████ of the film relates to the Globetrotters, HGI has no monopoly on telling the history of the time when Clifton played as a Globetrotter. Its rights, if any, are limited to references to the HGI Marks during that period, and HGI has made no effort to measure the quantity or character *of those references*, much less to challenge their artistic relevance. Defendants respectfully ask the Court to view the film. Ex. A-1.

In sum, the references in the film to the alleged HGI Marks were "not arbitrarily chosen just to exploit the publicity value of [HGI], but instead ha[ve] genuine relevance to the film's story." *Medina v. Dash Films, Inc.*, No. 15-cv-2551, 2016 U.S. Dist. LEXIS 91691, at *14–15 (S.D.N.Y. July 14, 2016). The Globetrotter references invoke the era, showcase Clifton's talents and motivations, and explain the NBA's interest in him. They tell his backstory. *See Univ. of Ala.*, 683 F.3d at 1278–79; *MGFB Props.*, 54 F.4th at 680–81 (using "Floribama" in TV show title artistically relevant as it described show's subculture).

> **3.    The use is not explicitly misleading as to source.** HGI also

fails to allege that Defendants have explicitly misled consumers as to the source of *Sweetwater*, and this, too, is fatal to its claims under the First Amendment. "The relevant question is whether (1) the secondary use overtly 'marketed' the protected work as 'endorsed' or 'sponsored' by the primary user or (2) 'otherwise explicitly

stated' that the protected work was 'affiliated' with the primary user." *MGFB Props.*, 54 F.4th at 682 (quoting *Univ. of Ala.*, 683 F.3d at 1279). HGI has not alleged that Defendants have marketed unlicensed items or made any explicit statements about HGI's "endorsement" or "sponsorship" of *Sweetwater.*

Courts assessing whether a defendant "explicitly misled" consumers as to the source or content of a film generally look to the credits of the film and other explicit statements by the defendants regarding responsible parties. *See, e.g.*, *Monbo v. Nathan,* No. 18-cv-5930, 2022 U.S. Dist. LEXIS 180608, at *109–10 (E.D.N.Y. Aug. 26, 2022) (assessing end credits and promotional materials); *Brown*, 394 F. Supp. 3d at 444 (concluding that because "Defendants specifically identify the persons responsible for the film, and Bobby Brown is not among them," they did not explicitly mislead consumers as to source of film about Whitney Houston featuring footage of Brown); *Medina*, 2016 U.S. Dist. LEXIS 91691, at *14–15 ("The complaint is devoid of concrete allegations that defendants attempted to suggest that plaintiff's duo produced the work; to the contrary, . . . materials promoting the film prominently informed the reader" that defendants produced it); *Winchester Mystery House, LLC v. Glob. Asylum, Inc.*, 148 Cal. Rptr. 3d 412, 422 (6th Cal. Dist. Ct. App. 2012) (looking to cover art and

to front and back cover, which explicitly stated who presented the film, in assessing whether alleged infringing use was "explicitly misleading").

Here, *Sweetwater's* credits identify the film's source, and HGI is not listed as one. *See* Ex. A-1 (opening and end credits). HGI's own allegations concede that Defendants have *not* claimed HGI as a source, i.e., not explicitly misled consumers: "The official movie poster for [*Sweetwater*] and related advertising content is . . . carefully curated to refer to the Knicks and the NBA only . . . ." Dkt. No. [25] ¶ 72. In other words, HGI's own pleading dooms its claims.

    **4.** **HGI's insinuations about uniforms and social media miss the mark**. HGI's allegations consist entirely of insufficient insinuations and assumptions that images of red-white-and-blue uniforms "create the perception that [*Sweetwater*] is an officially sanctioned Globetrotters movie." Dkt. No. [25] ¶ 73; *see also* Dkt. No. [25] ¶ 74 (official trailer "contains multiple images of Clifton as a Globetrotter"); ¶ 75 (article features photo of actors in uniforms); ¶¶ 76–81 (social media posts by "actors and other individuals" reflect "the apparent understanding that the Movie is a 'Globetrotters movie'"). Especially because Defendants have made no explicit statement that HGI is a source of the film, HGI's attenuated allegations of an implied connection plainly fail to satisfy *Rogers*.

First, the fact that the official trailer contains "images of Clifton as a Globetrotter" does not "explicitly mislead" consumers. Inclusion of these images does not constitute "overtly 'market[ing]' the protected work as 'endorsed' or 'sponsored' by [HGI]," nor is it an explicit statement that the film is "affiliated" with HGI. *MGFB Props.*, 54 F.4th at 682; see also *Univ. of Ala.*, 683 F.3d at 1278–79. Rather, the trailer accurately depicts *Sweetwater*, which chronicles Clifton's rise from the Globetrotters to the NBA, and the clips necessarily show Clifton playing for and with the Globetrotters as a reflection of history. Moreover, HGI has not alleged any facts showing that today's public would recognize the uniform in the clip as a source identifier for HGI.

Second, the Variety magazine photo of actors in their "Globetrotter uniforms" is not an "explicitly misleading" statement. Even assuming that the article is a statement made by Defendants, HGI does not allege that it is an explicitly misleading statement as to the film's source: the title names Briarcliff; and the cast photo simply depicts actors in vintage-style uniforms.

Third, the social media activities of "actors and other individuals" are not attributable to Defendants and cannot constitute the explicitly misleading statement necessary under *Rogers*. HGI does not allege that these individuals are agents or representatives of Defendants or that they otherwise acted under Defendants'

18

direction and control such that these posts may be imputed to Defendants. The "actors and other individuals" acted independently in posting on social media. Moreover, the fact that the posts allegedly featured *Sweetwater* actors in their "Globetrotter uniforms," reposted the film's trailer, or used the hashtag "#Globetrotters" is simply insufficient to constitute an explicitly misleading statement as to the source of *Sweetwater*. *See MGFB Props.*, 54 F.4th at 682 (holding that Twitter post by the defendant's president was insufficient to constitute an explicitly misleading statement even where president used hashtag).

Finally, Defendants' alleged failure to have the posts removed or one of the film's producers' alleged "liking" one of the posts (Dkt. No. [25] ¶¶ 82, 83) is no substitute for an explicitly misleading statement as to source. *Rogers* requires an affirmative, explicit statement by Defendants that HGI is affiliated with, sponsored, or endorsed the film, and HGI's allegations simply fall short.

### C.    The statutory fair use defense also bars HGI's claims.

HGI's claims must be dismissed for the alternative reason that Defendants do not use the alleged HGI Marks as marks, i.e., as a source designation, and therefore 15 U.S.C. § 1115(b)(4) shelters the use. Section 1115(b)(4) provides a defense when "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . which is descriptive of and used fairly and in

good faith only to describe the goods or services of such party, or their geographic origin." "A fair-use defense is established if a defendant proves that its use is (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Thoroughbred Legends, LLC v. Walt Disney Co.*, No. 07-cv-1275-BBM, 2008 U.S. Dist. LEXIS 19960, at \*27 (N.D. Ga. Feb. 12, 2008) (citing *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006)).[7]

Undoubtedly, *Sweetwater's* depiction of the alleged HGI Marks is not to designate source or endorsement of the film but rather is to describe the history Clifton shared with the Globetrotters. In cases involving expressive works, courts recognize that, at times, it is necessary to use another's mark as a reference. While not a traditional application of the statutory fair use defense, courts have applied the defense to expressive works that reference another's mark. *See, e.g., ETW Corp.*, 332 F.3d at 920–21 (applying statutory fair use defense to use of Tiger Woods's name in narrative describing painting commemorating his victory at Master's Tournament in 1987 as use was "purely descriptive" and other materials

---

[7] This test is similar to the one for nominative fair use, which considers whether the defendant (1) used the plaintiff's mark to identify the plaintiff's not otherwise readily identifiable product; (2) used only as much of the mark as reasonably necessary; and (3) suggested sponsorship by the plaintiff. *Parsons v. Regna*, 847 F. App'x 766, 773–74 (11th Cir. 2021).

"clearly identify" print's source); *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 756 (6th Cir. 1998) (reversing injunction where photographer sold posters of plaintiff's building and used "ROCK N ROLL HALL OF FAME" to describe it because use described the "good" itself)[8]; *WCVB-TV v. Boston Athletic Ass'n*, 926 F.2d 42, 46 (1st Cir. 1991) (finding fair use of "Boston Marathon" because the term "*describe[d]*" the broadcast); *Thoroughbred Legends*, 2008 U.S. Dist. LEXIS 19960, at *27–29 (deeming "Ruffian" title for film about famous racehorse Ruffian descriptive).

In *Rin Tin, Inc. v. First Look Studios, Inc.*, the court squarely applied the statutory defense to a film titled "*Finding Rin Tin: The Adventure Continues*," based on the life of the original Rin Tin, which depicted a dog named "Rin Tin." 671 F. Supp. 2d 893, 901–02 (S.D. Tex. 2009). The plaintiff, holder of trademark registrations for RIN TIN, ran a German Shepard dog-breeding program after the original Rin Tin, a dog found during World War I who starred in U.S. films. *Id.* at 894–95. In determining that the statutory defense protected the defendants' use, the court noted that products and films named after historical figures—representing

---

[8] On remand, the district court did find fair use since the artist was merely labeling his poster. *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 71 F. Supp. 2d 755, 764 (N.D. Ohio 1999).

those historical figures—are descriptive uses. *Id.* at 899. Key to the descriptiveness analysis is "whether use of the term is meant to identify the source of the good or service, or whether such use is meant solely to describe the product." *Id.* In *Rin Tin*, the defendants' use was descriptive because it "described the content of a film representing the early life of the historical dog Rin Tin" and the DVD cover correctly named the film's sponsors. *Id.*; *see also Thoroughbred Legends*, 2008 U.S. Dist. LEXIS 19960, at *28–29 (finding fair use where DVD cover made film's origin clear).

So too here. The Globetrotters are an historical team. *Sweetwater* tells the remarkable story of one of their own who broke basketball's racial barrier. Clifton's time with the Globetrotters is foundational to his rise; his display of talent on the court with the Globetrotters is what drew the NBA's attention. The rest was history. *Sweetwater's* depiction of Clifton's time with the Globetrotters and its use of the alleged HGI Marks in not gratuitous nor is it an identifier of the film's source; it is necessary for context, to explain how Clifton attracted the NBA's notice, to tell a compelling story about a pivotal point in history. And, as in *Rin Tin*, *Sweetwater's* on-screen credits list its sponsors—HGI is conspicuously absent.

Finally, Defendants acted in good faith.[9] Courts look to "whether the alleged infringer made clear on its product's face that it—and not the trademark holder—is the source of the product." *Rin Tin,* 671 F. Supp. 2d at 901. *See also Int'l Stamp Art*, 456 F.3d at 1275 (finding defendant's placement of its own mark on its products was "affirmative evidence of good faith" because it identified the products as its own); *Thoroughbred Legends*, 2008 U.S. Dist. LEXIS 19960, at *28 (holding that studio's name on DVD conveyed information about film's source or origin while use of horse's name in film's title did not). Here, *Sweetwater's* source is identified in the credits. *See* Ex. A-1 (credits). Nowhere is HGI mentioned. Because fair use applies, HGI's Amended Complaint must be dismissed.

## III.   HGI's Dilution Claim Separately Fails For the Independent Reason that HGI Does Not Plausibly Allege Fame for Each of the HGI Marks.

"To establish a claim of trademark dilution . . . , [HGI] is required to prove, inter alia, that the plaintiff's mark is famous, meaning that it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Kason Indus. v. Allpoints Foodservice Parts & Supplies, LLC*, No. 3:17-cv-26-TCB, 2018 U.S. Dist. LEXIS 173096, at *4 (N.D. Ga. Mar. 6, 2018) (internal quotations omitted). HGI alleges that the

---

[9] Sunset did not act regarding the film because it did not produce it. *See* Sec. I.B.

Globetrotters are "one of the world's best basketball teams," are "one of the United States' most popular family entertainment attractions," and were featured in two films in the 1950s and have appeared on TV. Dkt. No. [25] ¶¶ 20–21, 25–27.

Through its recital of the Globetrotters' popularity and skills, HGI fails to explain to which of the multiple HGI Marks the Globetrotters' alleged fame attaches. "The court is to consider the duration, extent, and geographic reach of advertising and publicity, the amount, volume, and geographic extent of sales of goods or services offered under the mark, extent of actual recognition of the mark, and when the mark was registered." *Brookwood Funding, LLC v. Avant Credit Corp.*, No. 1:14-cv-2960-SCJ, 2015 U.S. Dist. LEXIS 191679, at *9 (N.D. Ga. July 28, 2015) (internal quotations omitted). HGI's recitations of the Globetrotters' alleged popularity, however, provides no specifics about these elements applied to each of the HGI Marks. For example, HGI's pleading offers no facts to show that the vintage Globetrotters' uniform design (the "Uniform Mark" (Dkt. No. [26] ¶¶ 32, 61)) is famous. The pleading is silent about the length of time and reach of any advertising and publicity over the Mark, the extent it was in use, and the extent of its actual recognition.[10] The same holds for the other HGI Marks.

---

[10] HGI has no registered rights in the Uniform Mark. *See* Dkt. No. [25] ¶ 32.

HGI summarily concludes that the HGI Marks have been in "widespread use" for decades, that it has invested "significant[ly]" in their promotion, and that, "collectively and individually," they have "become widely recognized." (Dkt. No. [25] ¶¶ 33–34, 36–37). But "whether a mark is 'famous' is a legal conclusion and . . . Plaintiff must allege facts which makes such a conclusion plausible." *Brookwood Funding*, 2015 U.S. Dist. LEXIS 191679, at *10. HGI's failure to allege such facts requires dismissal of its claim for this independent reason. *See Kason Indus.*, 2018 U.S. Dist. LEXIS 173096, at *8.[11]

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint for lack of personal jurisdiction, or, alternatively, dismiss it for failure to state a claim.

/s/ Chittam U. Thakore
Chittam U. Thakore
Georgia Bar No. 890965

---

[11] Even assuming HGI had plausibly alleged fame, its dilution claim (whether by blurring or tarnishment) fails because "[a]ny fair use . . . of a famous mark by another person other than as a designation of source for the person's own goods or services" is "not [] actionable as dilution." 15 U.S.C. § 1125(c)(3). *Sweetwater's* use of the alleged HGI Marks is protected under the First Amendment. *See* Section II.B. Thus, "*Rogers* and its progeny are fatal to the dilution claim." *MGFB Props., Inc. v. Viacom, Inc.*, 2021 U.S. Dist. LEXIS 201502, at *24. The use is also fair use (*see* Section II.C), which defeats the claim. *E.g.*, *ETW Corp.*, 332 F.3d at 924, n.7. Finally, HGI cannot maintain a dilution by tarnishment claim as it does not allege that *Sweetwater* harms the Globetrotters' prestige. *See Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1358 (S.D. Fla. 2012).

ThakoreC@ballardspahr.com
Lawrence K. Nodine
Georgia Bar No. 545250
NodineL@ballardspahr.com
BALLARD SPAHR LLP
999 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (678) 420-9300

Catherine Seibel (*Pro Hac Vice*)
SeibelC@ballardspahr.com
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: 212-223-0200

Jay Ward Brown (*PHV applied for*)
BrownJay@ballardspahr.com
1909 K St., NW, 12th Floor
Washington, DC 20006
Telephone: 202-508-1136

*Counsel for Defendants Sunset Pictures,*
*LLC and Briarcliff Entertainment LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to LR 7.1D, that the foregoing ***Brief In Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint*** complies with the font and point selections approved by the Court in LR 5.1B. The foregoing was prepared on a computer using the 14-point Times New Roman font.

This 5th day of April 2023.

/s/ *Chittam U. Thakore*
Chittam U. Thakore
Georgia Bar No. 890965
ThakoreC@ballardsphar.com

*Counsel for Defendants Sunset Pictures, LLC and Briarcliff Entertainment LLC*